ELECTRONICALLY FILED BY
BELDING, HARRIS & PETRONI, LTD.
ON 6/24/09

STEPHEN R. HARRIS, ESQ.
BELDING, HARRIS & PETRONI, LTD.
**Nevada Bar No. 001463**
417 West Plumb Lane
Reno, Nevada 89509
Telephone: (775) 786-7600
Facsimile: (775) 786-7764
E-Mail: steve@renolaw.biz
Proposed Attorneys for Debtors

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

* * * * *

IN RE:

SILVER CLUB, a Nevada corporation

☐ Affects this Debtor.
☒ Affects all Debtors.
☐ Affects Parker's Model T, Inc.
☐ Affects The Holder Group El Capitan, Inc.
☐ Affects The Holder Group Elko, LLC

Debtors.
_____/

Case No.: BK-N-09-51953-GWZ; Chapter 11
Jointly Administered with:

| | |
|---|---|
| 09-51956 | Parker's Model T, Inc. |
| 09-51958 | The Holder Group El Capitan, Inc. |
| 09-51961 | The Holder Group Elko, LLC |

Hrg. DATE:  June 25, 2009
Hrg. TIME:  3:00 p.m.
Est. Time:  1 hour
Set By:  Judge Zive

**EMERGENCY MOTION FOR INTERIM APPROVAL OF USE OF CASH
COLLATERAL BY DEBTORS AND GRANTING ADEQUATE PROTECTION
AND SCHEDULING A FINAL HEARING TO APPROVE USE OF CASH
COLLATERAL BY DEBTORS**

SILVER CLUB, a Nevada corporation; PARKER'S MODEL T, INC., a Nevada

corporation; THE HOLDER GROUP EL CAPITAN, INC., a Nevada corporation; and THE

HOLDER GROUP ELKO, LLC, a Nevada limited liability company (collectively, the "Debtor

Entities"), by and through their proposed counsel, the law firm of BELDING, HARRIS &

PETRONI, LTD., hereby submit their EMERGENCY MOTION FOR INTERIM APPROVAL

OF USE OF CASH COLLATERAL BY DEBTORS AND GRANTING ADEQUATE

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

1

PROTECTION AND SCHEDULING A FINAL HEARING TO APPROVE USE OF CASH COLLATERAL BY DEBTORS (The "Motion").

This Motion is made and based on the points and authorities below, the OMNIBUS DECLARATION OF CHRIS COLEY IN SUPPORT OF FIRST DAYMOTIONS (the "Coley Declaration"), the papers and pleadings on file herein, judicial notice of which is respectfully requested, and any arguments of counsel entertained at any interim or final hearings on this matter.

## I.

## CONCISE STATEMENT OF RELIEF REQUESTED

This concise statement of relief requested is made pursuant to Bankruptcy Rule 4001(b)(1)(B). This Motion seeks entry of a proposed ORDER GRANTING EMERGENCY MOTION FOR INTERIM APPROVAL OF USE OF CASH COLLATERAL BY DEBTORS AND GRANTING ADEQUATE PROTECTION AND SCHEDULING A FINAL HEARING TO APPROVE USE OF CASH COLLATERAL BY DEBTORS (the "Emergency Order"), thereby approving an emergency interim basis for the Debtors' Cash Collateral Use, pursuant to Bankruptcy Rule 4001(b) and LR 4001(b). This Motion further requests that the Court schedule a final hearing for the approval of the Debtors' Cash Collateral Use at least twenty (20) days hereafter.

Northern Nevada Asset Holdings, LLC, a limited liability company (the "Lender"), claims a security interest in all or substantially all of Debtors' real and personal property pursuant to that certain Credit Agreement, originally entered into on July 31, 2007, with the Debtors and First National Bank of Nevada ("Bank"), pursuant to which the Debtors procured a loan in the principal amount of $33,000,000.00 (the "Loan"), under the Credit Agreement, the proceeds from the Loan were to be utilized to conduct the Debtors' business operations pertaining to the

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

2

casino business of the Debtors. The Loan is evidenced by a revolving credit note (the "Note"), dated July 31, 2007, executed by the Debtors jointly and severally in favor of the Bank. The Loan was secured, in part, by certain deeds of trust granted over the casinos, which included Security Agreements at the time that are rents and fixture filings, to the Bank as Beneficiary. Upon information and belief, no other creditor has a secured claim to or a lien in the Cash Collateral, except as otherwise set forth in the Motion. Bank was ultimately taken over by the FDIC, and the FDIC sold the Note to Northern Nevada Asset Holdings, LLC.

      The Debtors cannot meet their ongoing postpetition obligations unless they have the immediate ability to use Cash on Hand, the Deposit Accounts and Post-Petition Cash. In the absence of such use, immediate and irreparable harm will result to the Debtors, their Estates and their creditors, and will render an effective and orderly reorganization of the Debtors' businesses impossible. Debtors intend to use the cash collateral for Ordinary Operating Disbursements and in accordance with the Cash Forecast attached to the Motion as Exhibit "A" and incorporated herein by that reference.

      1.    The Cash Collateral Budget or Cash Forecast Budget for each of the four (4) Debtor Entities allows for the Debtors' use of Cash Collateral in accordance with the Cash Forecasts attached hereto, while preserving the Debtors' and the Lender's claims regarding the Cash Collateral. The proposed interim cash collateral use allows the Debtors to effectively operate and maintain their businesses during the Chapter 11 cases and is essential to an effective reorganization.

      2.    As part of the Cash Forecasts and use of cash collateral in accordance with these Cash Forecasts, Debtors will provide certain acknowledgments and agreements concerning the Lender's security interests in and liens on the Collateral, subject to an exception on Cash on Hand, Deposit Accounts and Post-Petition Cash.

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

3

3. As and for adequate protection of the Lender's security interests in the Prepetition Collateral, the Debtors propose the following restrictions for their interim Cash Collateral use: (i) the Lender is granted Replacement Liens on all Collateral, and, except for Chapter 5 causes of action, on all Post-Petition Collateral to the extent of a diminution in value of its Prepetition Collateral; (ii) Debtors shall make adequate protection payments to the Lender on behalf of the Lender in an amount equal to the Debtors' Cash and Cash Equivalents (as reflected on the Debtors' balance sheet) in excess of $500,000.00 for each of the Debtor Entities, to be measured as of the last day of each fiscal quarter and to be paid on the 30th day thereafter, and subject to other limitations.

4. Entry of the Emergency Order would only grant Debtors' such authority until a final hearing can take place pursuant to Bankruptcy Rule 6003, whereas the final hearing would grant such authority under the terms of the proposed cash collateral use. Debtors seek to use all Cash Collateral as provided for in Section 363 of the Bankruptcy Code.

## II.

## INTRODUCTION

1. On June 19, 2009 (the "Petition Date"), Debtors filed their voluntary petitions under Chapter 11 of the Bankruptcy Code.

2. Debtors continue to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3. No request has been made for the appointment of a trustee or examiner, and no official committees have yet been established in these cases.

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

4

## III.

## JURISDICTION AN D VENUE

4.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1134.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (D) and (M).

5.   The basis for the relief sough herein are Sections 361 and 363 of the Bankruptcy Code, Bankruptcy Rules 4001(b) and 6003, and LR 4001(b).

6.   Venue of Debtors' Chapter 11 cases in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## IV.

## BACKGROUND

7.   The Debtors collectively form a diversified gaming company that focuses on four (4) locations in Northern Nevada, including casino operations, both gaming and slot machines.  The Debtors' casino gaming operations consist of five (5) casinos (and hotel/casinos) located in Northern Nevada, specifically Elko, Hawthorne, Sparks and Winnemucca.

**A.   Casino Gaming.**

8.   The Debtors collectively form a diversified gaming company that focuses on casino operations.  Debtor THE HOLDER GROUP ELKO, LLC, operates the following: the Commercial Casino, with 185 slot machines and no table games; The Stockmen's, with 187 slot machines, 9 table games and 141 hotel rooms; The Scoreboard, with 107 slot machines and no table games, in Elko, Nevada; Debtor THE HOLDER GROUP EL CAPITAN, INC., operates 244 slot machines, 5 table games and 100 hotel rooms in Hawthorne, Nevada; Debtor PARKER'S MODEL T, INC., operates 235 slot machines, 4 table games and 84 hotel rooms, in Winnemucca, Nevada; and Debtor SILVER CLUB, was operating 380 slot machines, 9 table games and 204 hotel rooms, but has temporarily been closed, located in Sparks, Nevada.

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

5

## V.

## RELIEF REQUESTED

9.  Debtors have an emergency need for use of the Cash Collateral in accordance with the Cash Forecast Budgets attached hereto as Exhibit "A", and request Court authorization on an emergency interim basis for such use in order to avert an immediate closure of its businesses, which require use of all such Cash Collateral for operations. The Budget was formulated after review of Debtors' normal and ordinary course cash needs in the operation of its businesses. Exhibit "A" also includes the CMS International payroll detail, given the fact that the Cash Forecast Budgets disclose significant monies being paid to CMS International, which entity serves the management function for all the properties, including gaming oversight and reporting, human resources, financial reporting and insurance procurement and collections. The Exhibit "A" detail also includes a breakdown for the budgeted CMS International invoices for each of the properties.

10. As of the Petition Date, the Debtors are informed and believe that the enterprise value of the Debtors' businesses as a going concern is more than the total amount owed under the Lender's Note. The Debtors believe that the enterprise value of the Debtors' businesses will not diminish provided the Debtors' businesses continuing to operate in the ordinary course and expenditure of capital expenditures as proposed in the Budget, all gaming licenses and permits remaining in place, and present management remaining in place.

11. Included in the Cash Forecast Budget for the Silver Club, located in Sparks, Nevada, is the cost to reopen the Silver Club, for less than one day, in order to preserve the gaming license for that location. The notification letters to the Nevada State Gaming Control Board and the breakdown for the license costs are attached hereto as Exhibit "B" and incorporated herein by that reference.

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

6

## VI.

## **LEGAL ARGUMENT**

12. Section 363(c) of the Bankruptcy Code provides that "[t]he trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless – (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).

13. The term "cash collateral" is defined in Section 363(a) of the Bankruptcy Code as including the following:

> [C]ash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use of occupancy of rooms and other public facilities in hotels, motels or other lodging properties subject to a security interest as provided in section 552 (b) of this title, whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a).

14. If, pursuant to Section 363(c)(2)(A) of the Bankruptcy Code, an entity with an interest in cash collateral consents to that collateral's use, sale or lease, a debtor-in-possession may still be required to provide adequate protection to an entity with an interest in the cash collateral. Section 363(e) of the Bankruptcy Code provides, in pertinent part, as follows:

> (e) Notwithstanding any other provision of this section, at any time, on any request of an entity that has an interest in property used, sold or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use sale, or lease as is necessary to provide adequate protection of such interest....

11 U.S.C. § 363(e).

15. As applied to the cases at hand, the Lender, is the only party with a properly

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

7

perfected security interest in Cash Collateral. Moreover, Debtors' immediate use of Cash Collateral is essentially to its ongoing operations and ability to reorganize. Most importantly, the proposed interim cash collateral use preserves the Debtors' and the Lender's claims regarding the Cash Collateral while allowing for its use to the benefit of all parties in interest.

16.  As such, the Court can and should grant Debtors the authority and approval to use Cash Collateral, first on an interim and emergency basis, and after further notice and hearing, on a final basis.

## VII.

## CONCLUSION

WHEREFORE, Debtors respectfully request that Court enter an order granting emergency interim approval of the Debtors' proposed interim use of cash collateral pursuant to Bankruptcy Rule 4001(b), and scheduling a final hearing for approval of the cash collateral use at least twenty (20) days hereafter. Debtors also request such other relief as is just and proper.

DATED this 24th day of June, 2009.

STEPHEN R. HARRIS, ESQ.
BELDING, HARRIS & PETRONI, LTD.
417 West Plumb Lane
Reno, Nevada 89509

_____
Attorney for Debtors

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

8